## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FABIO DASILVA, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| DT RENTAL CENTER, LLC | : | |
| D/B/A DECKER TOOL | : | |
| RENTAL CENTER | : | |
| | : | |
| Defendant. | : | |
| | : | SEPTEMBER 8, 2020 |

## COMPLAINT

### JURISDICTION AND VENUE

1. This action arises under the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), codified as amended at 42 U.S.C. § 12101 et seq.; Title VII of the Civil Rights Act of 1964 codified as 42 U.S.C. 2000e, et al. ("Title VII"); the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. 46a-60, et seq.; and Connecticut state law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims are invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. §1988.

6. The Plaintiff received a Notice of Right to Sue on June 10, 2020.

## **PLAINTIFF**

7. The Plaintiff, Fabio DaSilva ("DaSilva" or "Plaintiff") resides at 2 Cambridge Circle, New Milford, CT 06776.

## **DEFENDANT**

8. The Defendant, DT Rental Center, LLC d/b/a Decker Tool Rental Center ("Defendant" or "Decker Tool"), is a foreign limited liability company, authorized to conduct business within the state of Connecticut, is registered with the state of Connecticut to conduct business and conducts substantial business at 24 Finance Drive, Danbury, CT 06810, where Plaintiff was employed."

9. Decker Tool employs more than (15) employees.

## **FACTUAL ALLEGATIONS**

10. Plaintiff is Hispanic and from Brazil.

11. Plaintiff was hired on November 20, 2018, for the position of Mechanic / Driver-Sales.

12. Plaintiff was the only Hispanic employee in his department, and at all times, Michael Decker ("Decker"), (Caucasian) was his Direct Supervisor.

13. Plaintiff always performed the duties of his position in a satisfactory manner— no write-ups, no poor performance reviews, and no disciplinary reprimands.

14. Unfortunately, due to the physical nature of the duties in his position, Plaintiff suffered multiple workplace injuries, which ultimately became the unjust reason for his termination.

### A. Mr. DaSilva's Workplace Injuries

15. First, the Plaintiff suffered a workplace injury on February 18, 2019. Specifically, that day, DaSilva significantly injured his left leg and lower back when an extremely heavy

(approximately 800 lbs.) aerial lift machine slid back on his body while he was loading the machine into a truck.

16. As a result of this workplace accident, it was vital that Plaintiff seek medical treatment at the American Family Urgent Care, where he was treated for an arm, neck and back injury and diagnosed with paresthesia in all his extremities, circumferentially.

17. The Urgent Care physician, Doctor Iftikhar Ali ("Dr. Ali"), opined that DaSilva suffered a work-related injury, and DaSilva was medically instructed to only work light duty capacity with a maximum weight lifting restriction of twenty pounds.

### B. Decker Tool Retaliates Against DaSilva and Fails to Accommodate Him After He Returned to Work

18. When Plaintiff returned to work with his light duty restrictions he was not accommodated and was treated disparately due to his disability.

19. Many times, Plaintiff was required to lift items that were in excess of his maximum weight lifting restrictions, mandated by Dr. Ali's orders.

20. Another time, Plaintiff was pointedly told that he could not sit down—despite knowing that his severe injuries caused him back pain—because it was not explicitly listed as one of his doctor's restrictions.

21. Instead of being accommodating, Defendant insinuated that Plaintiff had been "milking" his injuries, regardless of having medical documentation supporting his injuries.

22. Decker Tool, despite the clear medical mandates given by Dr. Ali, not only failed to accommodate Plaintiff's known disability, deliberately disobeying his doctor's instructions, but also completely failed to engage in the ADAAA required "interactive process" to determine the necessary accommodations.

23. A reasonable accommodation that Decker Tool could have offered in order to appropriately address Plaintiff's disability would have been a Leave of Absence (LOA).

24. Nevertheless, this interactive process to truly accommodate Plaintiff's disability never occurred, and as a consequence, DaSilva was left with no other option, but to force himself to perform duties that were beyond his lifting capacity and endure the extreme pain that made him physically unable to go to work during certain days.

25. Decker, who was fully aware of Plaintiff's medical disability decided to address it with the most wrongful approach and began attacking DaSilva with constant reproaches about missing days of work when he had extreme pain to the point where he could not even get out of bed, instead of engaging in the "interactive process" to determine how to accommodate Plaintiff's known disability.

26. Desperate with the severe hostile work environment Plaintiff's had been enduing, and with the endless criticism and outright harassment he was being subjected to due to the restrictions prescriptive to his job, DaSilva requested his doctor to lift his light duty restrictions so he could, despite his pain, perform the totality of his duties, since Decker Tool had not offered an accommodation.

27. This desperate move was solely to avoid any future workplace harassment and for DaSilva to secure his job because he was being scrutinized for taking time off for his injuries.

28. Unfortunately, approximately three days after returning to work full capacity to save his job, DaSilva reinjured his back and neck, and this time he also injured his shoulder while lifting a heavy power washer.

29. Given the gravity of his injury, and the unbearable pain, on March 17, 2019, DaSilva went to Urgent Care again, and once again, his medical professional returned him to light duty with a twenty-pound weight restriction again.

30. Aware of the fact that the average minimum weight he would be handling was higher than the one established for his light-duty prescription, and given the overpowering pain he had been experiencing, DaSilva was forced to take some days off of work to rest his injuries.

31. When Plaintiff had taken time off of work, the pain was sometimes so intense that he could not even leave his bed, or interact with his young child, causing him further emotional distress and mental anguish.

32. Desperate to balance his work responsibilities and his recovery time, days before his termination, Plaintiff met with his supervisor, Michael Decker, Jr. on Thursday, March 21, 2019.

33. During that meeting, Plaintiff recapitulated to Decker that his known injuries had recently been exacerbated and that he needed to sometimes take days off of work as there are days when he could not even get out of bed in the morning due to the severity of his pain.

34. Decker appeared (or at least pretended) to be concerned regarding DaSilva's concern over missing time off of work, and reassured him by stating "**don't worry about it, I'll take care of it.**"

35. Decker's explicit promise to take care of DaSilva and permit him time off was either stunningly negligent or deliberately disingenuous.

36. The following Wednesday, March 27, 2019, knowing of DaSilva's need to rest his body from his workplace injuries, Decker Tool nonetheless terminated DaSilva from his position.

37. While Plaintiff had been accused of "milking" his injury, the injury was severe to the extent of requiring surgery to be performed on May 21, 2019. Doctor David Bomback established a two-month recovery period ending on July 21, 2019, when Plaintiff would have been cleared to return to work <u>with no restrictions</u>, within an acceptable timeframe.

### COUNT ONE

### DISABILITY DISCRIMINATION, IN VIOLATION OF THE ADAAA

38. Plaintiff hereby incorporates Paragraphs 1-37 with the same force and impact as if fully set forth herein.

39. Plaintiff suffered multiple disabilities to his arm, neck, and back while performing the duties of his job on February 18, 2019.

40. Plaintiff's treating physician, Dr. Ali, instructed Plaintiff to go on light duty capacity with a maximum weight lifting restriction of twenty pounds.

41. Nonetheless, these work restrictions were completely ignored by Decker Tool, and DaSilva was required to lift items that were in excess of this maximum weight lifting orders.

42. Plaintiff was not only not accommodated in terms of the job restrictions placed by the treating Dr. Ali, but he was even prohibited from sitting down just on the basis that this had not been explicitly requested in Dr. Ali's note.

43. Immediately after Dr. Ali lifted DaSilva's weight restrictions— at DaSilva's request, due to the hostility he was enduring on a daily basis—DaSilva significantly reinjured his back and neck and he also injured his shoulder while lifting a heavy power washer.

44. As a consequence, DaSilva's treating Doctor once again had to place weight restrictions on DaSilva's lifting ability.

45. Mindful of the refusal from Decker Tool to follow the weight restrictions placed by his previous treating physician, and overwhelmed with unbearable pain he was suffering, DaSilva was forced to take some days off of work.

46. On March 21, 2019, Plaintiff had a conversation with Michael Decker, Jr. in regard to the time off he needed for his recovery.

47. Decker expressed his approval and pointedly told Plaintiff "don't worry about it, I'll take care of it."

48. On March 27, 2019, DaSilva was terminated approximately six days after he requested an accommodation

49. Respondent discriminated against the Plaintiff and treated him in a disparate manner in the terms and conditions of his employment based upon his disability, including, but not limited to the following:

    (a) Failing to engage in the ADAAA mandatory "interactive process" to "identify and implement appropriate reasonable accommodations;

    (b) Failing to accommodate the Plaintiff's job's restrictions.

    (c) Terminating the Plaintiff's employment on March 27, 2019, six days after he requested an accommodation for his known disability.

50. Defendant's actions were taken because the Plaintiff had a disability.

51. Plaintiff's actions are in violation of the ADAAA.

52. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

53. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT TWO

### VIOLATION OF THE ADAAA, FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS, FAILURE TO ACCOMMODATE

54. Plaintiff incorporates paragraphs 1-53, with the same force and impact as if fully set forth herein at length.

55. Decker Tool failed to accommodate the Plaintiff's known disability, by, among other things:

   (a) Failing to engage in the ADAAA mandatory "interactive process" to "identify and implement appropriate reasonable accommodations;

   (b) Failing to accommodate the Plaintiff's job's restrictions.

   (c) Terminating the Plaintiff's employment on March 27, 2019, six days after he requested an accommodation for his known disability.

56. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

57. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT THREE

## RETALIATION,
## IN VIOLATION OF THE ADAAA

58. Plaintiff incorporates paragraphs 1-57, with the same force and impact as if fully set forth herein at length.

59. Among other factors that motivated Decker Tool's termination of DaSilva was retaliation due to his multiple requests, need, and persistence for an accommodation.

60. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

61. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT FOUR

## VIOLATION OF TITLE VII,
## DISCRIMINATION BASED ON HISPANIC RACE, ANCESTRY AND BRAZILLIAN NATIONAL ORIGIN

62. Plaintiff hereby incorporates paragraphs 1-61 with the same force and impact as if fully set forth herein.

63. Plaintiff is Hispanic and from Brazil.

64. Plaintiff was hired on November 20, 2018.

65. Plaintiff was qualified for his position.

66. Plaintiff was the only Hispanic employee in his department.

67. Decker, Plaintiff's Direct Supervisor at the time was Caucasian.

68. Respondent discriminated against the Plaintiff and treated him in a disparate manner in the terms and conditions of his employment based upon his Hispanic race, ancestry, and Brazilian National Origin, including, but not limited to the following:

    (a.) Terminating the Plaintiff's employment on March 27, 2019.

69. Defendant's conduct is unlawful and in violation of Title VII.

70. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

71. Plaintiff is seeking damages as a result of Defendant's willful and wanton misconduct.

## COUNT FIVE

### VIOLATION OF CONN. GEN. STAT. SECT. 31-290A(A), WORKERS' COMPENSATION RETALIATION

72. Plaintiff hereby incorporates Paragraphs 1-71, with the same force and impact, as if fully set forth herein.

73. Plaintiff suffered a workplace injury on February 18, 2019.  Specifically, that day, DaSilva significantly injured his left leg and lower back when an extremely heavy (approximately 800 lbs.) aerial lift machine slid back on his body while he was loading the machine into a truck.

74. DaSilva significantly reinjured his back and neck and this time he also injured his shoulder while lifting a heavy power washer.

75. Due to his workplace injury, DaSilva filed a formal worker's compensation claims with the State of Connecticut.

76. Plaintiff required surgery to be performed on May 21, 2019.

77. Plaintiff was retaliated against and terminated for exercising his protected rights under the worker's compensation statute and Decker Tool terminated the Plaintiff's employment on March 27, 2019.

78. Plaintiff is seeking damages as a result of Defendant's willful and wanton misconduct.

## COUNT SIX

### PROMISSORY ESTOPPEL

79. Plaintiff hereby incorporates Paragraphs 1-78, with the same force and impact, as if fully set forth herein.

80. Desperate to balance his work responsibilities and his recovery time, days before his termination, Plaintiff met with his supervisor, Michael Decker, Jr. on Thursday, March 21,

2019.

81. During that meeting, Plaintiff recapitulated to Decker that his known injuries had recently been exacerbated and that he needed to sometimes take days off of work as there are days when he could not even get out of bed in the morning due to the severity of his pain.

82. Decker appeared (or at least pretended) to be concerned regarding DaSilva's concern over missing time off of work, and reassured him by stating "**don't worry about it, I'll take care of it**."

83. The following Wednesday, March 27, 2019, knowing of DaSilva's need to rest his body from his workplace injuries, Decker Tool terminated DaSilva from his position.

84. DaSilva relied on Mr. Decker's promises to his detriment.

85. Plaintiff is seeking damages as a result of Defendant's misconduct.

## COUNT SEVEN

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

86. Plaintiff incorporates paragraphs 1-85, with the same force and impact as if fully set forth herein at length.

87. The Defendant's conduct was extreme and outrageous and was intended to cause the Plaintiff emotional distress.

88. As a result of the Defendant's conduct, the Plaintiff has suffered lost wages and benefits of employment.

89. As a result of the Defendant's conduct, the Plaintiff has suffered litigation expenses and attorney fees.

90. As a result of the Defendant's conduct, the Plaintiff has suffered emotional distress.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages;

2. Costs;

3. Punitive damages, attorney fees, and expert witness fees;

4. Pre-judgment interest

5. Trial by jury; and

6. Such other relief as the Court deems just, fair, and equitable.

THE PLAINTIFF,
FABIO DASILVA


By: _____/s/_____
Michael C. McMinn (#ct267169)
**THE MCMINN EMPLOYMENT LAW FIRM, LLC**
1000 Lafayette Blvd., Suite 1100
Bridgeport, CT 06604
Tel: (203) 683-6007
Fax: (203) 680-9881
michael@mcminnemploymentlaw.com

*COUNSEL FOR PLAINTIFF*